Filed 5/1/23  In re H.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re H.S. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRITTNEY S.,<br><br>Defendant and Appellant. | F085266<br><br>(Super. Ct. Nos. JVDP-21-000074, JVDP-21-000075)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy Giacopuzzirotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Detjen, J. and Snauffer, J.

Appellant Brittney S. (mother) is the mother of now four-year-old, Hudson S. and two-year-old H.M. (collectively "the children"), who are the subjects of a dependency case. At a six-month review hearing in April 2022, the juvenile court terminated mother's family reunification services. In August 2022, mother filed a petition under Welfare and Institutions Code section 388[1] asking the juvenile court to order additional family reunification services. The juvenile court denied mother's petition at a section 366.26 hearing on November 8, 2022, which resulted in mother's parental rights being terminated. On appeal, mother contends the juvenile court erred in denying the petition. We find no abuse of discretion, and thus we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Initial Removal*

In March 2021, the Stanislaus County Community Services Agency (agency) received a referral alleging that mother tested positive for amphetamines at the time of H.M.'s birth. Mother admitted to using methamphetamine in the 24 hours prior to her arrival at the hospital. She did not receive prenatal care because she did not plan on having H.M. After her birth, H.M. was admitted to the Neonatal Intensive Care Unit (NICU) of the hospital due to her premature birth at 33 weeks of estimated gestation.

The following day, an emergency response social worker arrived at the hospital to investigate the referral. The social worker was informed that mother minimized her substance abuse and had two other children that were not in her care. Mother reported that Hudson was living with a maternal aunt for the past six months, and the children's other sibling lived with the sibling's father. Mother indicated the sibling's father was awarded full custody when she became homeless. She denied having a problem with methamphetamine and claimed she only used once during her pregnancy with H.M.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

because she was stressed out. H.M.'s father, Phil M. (Phil), was described as supportive, and mother denied any violence in their relationship. Phil denied substance abuse and explained that he and mother were in a relationship for almost a year. The social worker offered mother voluntary services, but mother declined because she did not use methamphetamine all of the time.

After speaking to the person caring for Hudson, the social worker discovered that she was actually mother's friend, who occasionally watched Hudson during the week. Mother acknowledged that she lied in order to make it appear as though Hudson was not in her care. She continued to minimize her addiction and did not take responsibility for her actions. The agency determined that it would seek a warrant to take the children into protective custody after a team decision meeting. Upon serving the warrant on mother, the social worker observed bruises on mother's face that appeared consistent with someone squeezing her cheeks. Mother stated, "It's best I do this alone," when the social worker asked her to provide copies of documents to Phil.

The agency filed an original petition alleging the children were described by section 300, subdivisions (b)(1) and (g). The petition alleged the children were at substantial risk of suffering serious physical harm as a result of mother's substance abuse. The petition further alleged that the whereabouts of the children's fathers were unknown. The agency's detention report set forth mother's child welfare history, which involved three referrals that were evaluated out in 2016 and 2017. The referrals alleged that mother was drinking alcohol excessively and had an alcohol problem. At the detention hearing held on April 6, 2021, the juvenile court detained the children from mother, ordered mother's visitation with the children to be supervised for two hours per week, and set a combined jurisdiction and disposition hearing for May 4, 2021.

*Jurisdiction and Disposition*

The agency's jurisdiction and disposition report recommended that the allegations in the original petition be found true, the children be removed from mother's custody, and

3.

family reunification services be provided to mother and Phil. The children were placed together in a foster home. Hudson was slowly adjusting to the placement, and the care provider explained that he was "a handful." He consistently cried and whined throughout the day, and he whined to communicate because he lacked verbal skills. H.M. was reportedly doing well and gaining weight in the home.

The report noted mother's criminal history, which consisted of charges for spousal battery, inflicting corporal injuries on a spouse, driving under the influence, and cruelty to a child causing possible injury or death. The resulting disposition of most charges were unknown, but mother was convicted for driving under the influence in May 2019 for an offense in August 2018. Mother declined to participate in a social history interview with the social worker. Supervised visitation consisted of a combination of virtual and in-person visits twice per week. A hair follicle drug test completed by mother on April 12, 2021, revealed positive results for methamphetamine and ethyl glucuronide. Mother was provided with referrals for a domestic violence assessment, individual counseling, parenting, a substance use disorder assessment, and random drug testing. As of May 18, 2021, mother had not contacted the providers to sign up for any of the services.

After multiple continuances to address paternity issues, the combined jurisdiction and disposition hearing was held on September 29, 2021. A first amended petition was filed on September 27, 2021, which added allegations pursuant to section 300, subdivision (b)(1) for both fathers and struck the allegations pursuant to section 300, subdivision (g) for both fathers. Mother's counsel submitted on the agency's recommendation. The juvenile court found the allegations of the amended petition true, ordered the children removed from mother's custody, and provided reunification services to mother and Phil. Mother's case plan consisted of a clinical assessment, individual counseling, a parenting program, a substance use disorder assessment, and random drug

4.

testing. A progress review hearing was set for December 29, 2021, and the six-month review hearing was set for March 23, 2022.

*Family Reunification Period*

At the progress review hearing held on December 29, 2021, mother was present and admonished by the juvenile court regarding the consequences if she did not engage in her court-ordered services. The agency's six-month status review report, filed on March 9, 2022, recommended that mother and Phil's family reunification services be terminated and a section 366.26 hearing be set for the children. In June 2021, the children were placed with mother's friend, who was approved as a nonrelative extended family member. However, the children were removed from the home in January 2022 due to an incident of domestic violence in the home. The children were then placed in a foster home together, and their care providers worked diligently to make the transition smooth for the children.

Both children were found to be in good health with no medical concerns noted. The regional center determined that Hudson met eligibility for services after conducting a psychological evaluation. Services were delayed due to Hudson's placement change, but an initial meeting was held in February 2022. Hudson was attending a "Head Start" program and receiving "WRAP" services to address his mental and emotional needs.

Mother appeared to be homeless and she made no efforts to engage in the services required by her case plan. Out of approximately 80 scheduled visits, mother failed to show for 26 visits and had 11 visits cancelled because she arrived late. Hudson began having outbursts and tantrums both after visits and during missed visits due to mother's inconsistency. The social worker was able to maintain minimal contact with mother. In her contacts with the social worker, mother expressed her belief that the children should not have been removed, and she failed to provide drug tests to support her claim that she was not using drugs. Educational and developmental services for the children were also

being delayed because mother was not responding to calls from the children's service providers.

The six-month review hearing was set for a contested hearing at the request of mother for April 12, 2022. The visitation supervisor noted that mother appeared to have a baby bump during a March 9, 2022 visit. The following week, it was noted that Hudson often ignored mother when she tried to redirect him, and she did not seem to be an authoritative figure to him. The social worker made contact with Phil in April 2022, and he explained that mother did not want him to speak to the agency. Phil and mother continued their relationship until approximately April 7, 2022, despite mother's reports to the agency that they were no longer in a relationship and she did not know his whereabouts. He admitted to using "crystal" two days earlier, and he reported mother was also using "crystal."

Mother failed to appear for the contested six-month review hearing held on April 12, 2022. Her attorney indicated mother understood that she failed to make the necessary progress, and she intended to enter a residential program to support the filing of a section 388 petition in the future. The juvenile court adopted the agency's recommendation and terminated family reunification services to mother and Phil. A section 366.26 hearing was scheduled for August 3, 2022.

*Selection and Implementation Hearing*

The section 366.26 report, filed by the agency on July 14, 2022, recommended that the juvenile court terminate the parental rights of mother and the children's fathers and a plan of adoption be ordered. The children remained placed in the same foster home since January 11, 2022, and the care providers desired to adopt the children. The care providers had developed a strong bond with the children and looked forward to meeting the children's needs as adoptive parents.

The children were in good health with no medical issues noted at their recent physicals. Hudson received services through the regional center twice per month and

"WRAP" services on a weekly basis with a focus on behavioral redirecting, appropriately expressing emotions, and safe boundaries. Hudson was making "excellent" progress in his services, and he was set to decrease sessions to every other week in the following month.

The report noted that mother failed to regularly or consistently visit the children, and she missed more visits than she attended since the children's removal in April 2021. Mother only attended three visits since her reunification services were terminated, and she struggled with redirecting Hudson's behaviors. Mother had minimal interaction with both children and Hudson appeared distracted during the visits. A contested section 366.26 hearing was set at the request of mother, but the hearing was continued to September 21, 2022, due to her recent claim that her adoptive grandfather might have Indian ancestry.

On August 31, 2022, mother filed a section 388 petition requesting additional reunification services based upon her entering a substance abuse program on June 7, 2022, engaging in "first step," and testing negative for all substances. The children's best interests were alleged to be served because she was "working [diligently]" to address her substance abuse issues and they would have a relationship with their newborn sibling. Letters attached to the petition indicated mother provided clean tests weekly during her 57-day stay at the program.

The juvenile court set the section 388 petition for a hearing on the same date as the contested section 366.26 hearing. Both hearings were continued to November 8, 2022, to allow additional time for responses from Indian tribes based upon mother's recent claim of Indian ancestry. The agency filed a report in response to mother's section 388 petition, which recommended that mother's petition be denied. The social worker received information that mother entered her substance abuse program's sober living and outpatient treatment in August 2022. The social worker noted that offering additional services would not be in the children's best interests given the expiration of the

18-month statutory limit and her failure to make any progress during her reunification period.

On November 8, 2022, the juvenile court held a contested hearing on mother's section 388 petition and the section 366.26 hearing. Mother was present and testified that she had 167 days of sobriety from methamphetamine and alcohol. She testified that she was "very, very bonded" with the children, and she insisted that "[e]verything would be different" if she was provided additional services for the children. Mother was participating in parenting classes, and she was able to have the children placed with her in the substance abuse program. Her visits with the children were scheduled once per month, and she had a hard time demonstrating her ability to redirect the children in the limited time.

Mother's counsel called the supervising social worker to testify regarding situations where mother redirected the children during visits. He acknowledged examples from recent visitation reports where mother either redirected the children or had to be admonished to watch H.M. more carefully.

In closing argument, mother's counsel argued that an opportunity for the children to reunite with mother through six more months of services would be in the children's best interests. Her counsel then clarified that she was not requesting that the children be returned to her care. Counsel for the children and agency argued that mother's petition should be denied due to a lack of changed circumstances.

After hearing argument from all counsel, the juvenile court proceeded to its ruling on the section 388 petition. The court commended mother on her 167 days of sobriety, but it concluded by stating,

> "I don't find that there are truly changed circumstances in a timely fashion as to [the children]. And even if it is truly a change of circumstances, it is not in their best interest given their age and their need for permanency and stability in their lives moving forward. [¶] Children can't wait for their parent to successfully recover for no end in time. [Mother] did have a positive test in May of 2022. That

was a year out. That is very troubling. I understand [she is] addressing it now, and I am very glad to hear that; however, I do not find that it is in the best interest of these children, and I am denying the [section] 388 request for reunification services."

Mother then provided testimony in opposition to the agency's recommendation to terminate parental rights. Counsel presented argument at the section 366.26 hearing, and the juvenile court followed the agency's recommendation to terminate the parental rights of mother and the children's fathers and select a plan of adoption for the children.

## DISCUSSION

Mother contends the juvenile court erred when it failed to grant her section 388 petition requesting additional reunification services. She argues that her petition and supporting documentation showed a change in her circumstances and her request was in the children's best interests.

### A. Legal Principles

A petition to modify a juvenile court order under section 388 must allege facts showing new evidence or changed circumstances exist and changing the order will serve the child's best interests. (§ 388, subd. (a); *In re Nolan W.* (2009) 45 Cal.4th 1217, 1235.) The petitioner has the burden of proof by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

Section 388 serves as an " 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528.) (*Kimberly F.*) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citations.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citations.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.) When determining whether a modification under section 388 would be in the best interests of the child, courts have considered several factors, including but not limited to: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.)

## B. Standard of Review

We review the denial of a section 388 petition after an evidentiary hearing for abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*Id.* at pp. 318–319.) " 'The denial of a section 388 motion rarely merits reversal as an abuse of discretion.' " (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.) Where

there is conflicting evidence, we reverse only if the evidence compels a finding for the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1529.)

### C. Analysis

In the present case, the juvenile court determined that mother did not prove the existence of a change in circumstance or the children's best interests were served by granting her request. Mother provided evidence that she was participating in substance abuse treatment, drug testing, and a parenting program in the five months prior to the section 366.26 hearing. These facts were understood and acknowledged by the court. However, it is irrelevant that there may be evidence which would support a conclusion contrary to that of the juvenile court. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.) The court denied mother's section 388 petition because it did not find that mother's circumstances were "truly changed" or that additional services were in the children's best interests, given their ages and need for permanency. Thus, the court properly focused on the children's permanency and stability when it considered mother's request to delay the children's proposed permanent plans.

Mother's argument that her bond with the children and participation in substance abuse treatment required resumption of reunification efforts ignores the legally required shift in focus once her reunification services were terminated. Mother's section 388 petition contemplated further delay in permanency for children who had remained in out-of-home care for more than 18 months. Although mother had begun making progress by participating in substance abuse treatment and a parenting class, the circumstances before the juvenile court showed that mother was still in the early stages of addressing her substance abuse problem. Mother's issues with abusing substances dated back to at least August 2018, based upon her driving under the influence conviction.

We acknowledge that mother's continued progress in treating her substance abuse problem indicates that her circumstances are changing, and mother's continued efforts are to be commended. However, mother must demonstrate "changed, not changing,

11.

circumstances." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) Thus, it was reasonable for the juvenile court to conclude mother's recent efforts in the months prior to the termination hearing evidenced "changing" rather than "changed" circumstances, particularly in light of her failure to make any efforts until 14 months had elapsed following the children's removal. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety not enough to demonstrate changed circumstances given the parent's history]; *Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."].)

Because mother did not make a sufficient showing that her circumstances had changed in the six months following the review hearing, the juvenile court properly denied her section 388 petition. By mother's own admission, she was still "working [diligently] to address her[ ]substance abuse issues." Mother had not yet demonstrated that she could maintain her sobriety while parenting the children outside of a controlled environment. In the context of an 18-month dependency period for the children, mother's belated efforts to maintain a bond and participate in programs demonstrated changing, but not changed, circumstances.

The children were placed with care providers who were committed to a plan of adoption for the 10 months preceding the hearing. Their placement with mother's friend had been previously disrupted, and mother's inconsistency with visitation had a detrimental effect on Hudson's emotional stability. Considering the very young children's heightened need for permanency and stability, and the inability of mother to consistently demonstrate her commitment to sobriety throughout the proceedings, the juvenile court's decision to forego additional reunification efforts was not arbitrary or beyond the bounds of reason. Accordingly, we find the juvenile court did not abuse its discretion in denying the section 388 petition.

## DISPOSITION

The juvenile court's orders are affirmed.